UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-CV-00001 JMB |
| | ) | |
| I-44 TRUCK CENTER & WRECKER SERVICE, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of Defendant I-44 Truck Center & Wrecker Service, LLC, for attorney fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. (ECF No. 97.) Plaintiff United States opposes. (ECF No. 102.) The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the issues have been fully briefed (ECF Nos. 104, 106). For the reasons set out below, the motion is **GRANTED IN PART.**

The EAJA requires a non-government prevailing party be awarded fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). There can be no doubt Defendant is the prevailing party in this action. *See Yarbrough v. Cuomo*, 209 F.3d 700, 703 (8th Cir. 2000). The United States argues a fee award would nonetheless be inappropriate because (1) its position was substantially justified; (2) special circumstances make a fee award unjust; and (3) Defendant has failed to demonstrate that it is entitled to fees beyond the statutory default of $125 per hour. Only the third argument has merit.

## I. <u>The position of the United States was not substantially justified</u>

To avoid an EAJA attorney fee award, the government bears the burden of demonstrating its "position" was "substantially justified." *Friends of the Boundary Waters Wilderness v. Thomas*, 53 F.3d 881, 885 (8th Cir. 1995). "Position" includes positions taken during litigation as well as the underlying government agency conduct that led thereto. *See* 28 U.S.C. § 2412(d)(2)(D); *Bah v. Cangemi*, 548 F.3d 680, 684 (8th Cir. 2008). "Substantially justified" means "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted).

Even an incorrect position can be substantially justified, "so long as a reasonable person could think it correct." *Bah v. Cangemi*, 548 F.3d 680, 683–84 (8th Cir. 2008) (quoting *Pierce*, 487 U.S. at 556 n.2). Losing an action does not create a presumption that the government acted unreasonably. *Goad v. Barnhart*, 398 F.3d 1021, 1025 (8th Cir. 2005). Yet the government must show its position was "more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve." *Pierce*, 487 U.S. at 566.

The Eighth Circuit has held that "the Government's ability to convince federal judges of the reasonableness of its position, even if the judges' and Government's position is ultimately rejected in a final decision on the merits, is the most powerful indicator of the reasonableness of an ultimately rejected position." *Herman v. Schwent*, 177 F.3d 1063, 1065 (8th Cir. 1999) (internal quotation marks omitted). However, prevailing at a preliminary stage "does not automatically grant the government immunity from EAJA liability." *United States SEC v. Zahareas*, 374 F.3d 624, 628 (8th Cir. 2004). Indeed, "where the government forces a party into lengthy administrative proceedings before final vindication of his or her rights[,] the government should have to make a

strong showing that its action was reasonable." *Cornella v. Schweiker*, 728 F.2d 978, 982 (8th Cir. 1984) (cleaned up) (quoting H.R. Rep. No. 1418, 96th Cong., at 14, as *reprinted in* 1980 U.S. Code Cong. & Ad. News 4989).

This case was ultimately resolved on a pair of threshold legal questions: first, whether the five-year statute of limitations in 28 U.S.C. § 2462 applies to proceedings under the Debt Collection Improvement Act, 31 U.S.C. § 3711, when the underlying money owed derives from OSHA penalties. As the Eighth Circuit put it, "[t]he question thus is whether the government is still enforcing a penalty under §2462 after it refers the assessed penalty to the DOJ for collection under the DCIA. The answer is yes." (No. 25-1828, slip op. at *4.) Second, having concluded that the five-year statute of limitations applied, whether the action initiated by the United States had been timely brought. Answering this question required determining when its causes of action accrued. The Eighth Circuit held that a plain reading of the applicable subsections of the DCIA showed the causes of action accrued when the underlying OSHA penalties became final orders. *See id.* at *7 (interpreting 31 U.S.C. § 3711(a)(1), (g)(9)(H), g(1)(B), and (g)(2)(A)(i)).

This Court's rulings in favor of the United States[1] are highly relevant in determining whether its position was reasonable, but they do not relieve the United States of showing its whole course of conduct—pre- and post-litigation—was substantially justified. Even assuming the United States was reasonable in continuing to litigate after this Court adopted its preferred reading of the DCIA, it has not explained the underlying agency action that necessitated an adjudication of these legal issues in the first place. *See* 28 U.S.C. § 2412(d)(2)(D) ("position of the United States" includes agency's "action or failure to act"); *Zahareas*, 374 F.3d at 627 (court considers whether government "acted reasonably at all stages of the litigation").

[1] This Court had held the five-year statute of limitations did not apply, so it had no occasion to consider when the government's causes of action accrued.

Before filing suit, the United States was—to put it mildly—no paragon of efficiency. The two OSHA penalties that triggered this litigation were finalized by November 2017. Yet this suit was not initiated until January 2023. In its opposition to Defendant's fee request, the government tries to explain what happened in the interim. It points to some agency attempts to collect the penalties by letter but does not explain whether OSHA verified Defendant was even receiving the communications, which all went unanswered. More importantly, the government does not address the two-year gap between December 2018, when the last collection letter was mailed, and December 2020, when a private collections agency (to which the debts had been referred) spoke to Defendant's owner by telephone. Even after December 2020, when Defendant's owner made clear it did not intend to pay the penalties, no agency enforcement commenced. The debts were referred to the Department of Justice, which took 15 months to issue demand letters and 10 additional months to file suit. All in all, there are some four years largely unaccounted for. In this case "fully analyz[ing] the facts and law" as required, *see Zahareas*, 374 F.3d at 628, the government has not shown its prefiling conduct was substantially justified. *See Cornella*, 728 F.2d at 985 (reversing the denial of an award of EAJA fees where, in part because of "lengthy delays," it took Social Security claimant "three and one-half years from the time he first sought judicial review to the date he finally received a favorable decision"); *Marshall v. United States*, 172 Fed. Cl. 60, 69 (2024) ("While some delay in bureaucratic processes is understandable, years of relative agency inaction is not."); *S.M.C. v. Easterwood*, No. 26-CV-539, 2026 WL 2517563, at *1 (D. Minn. Aug. 26, 2026) ("A failure to explain the conduct giving rise to the action is . . . a failure of proof by the Government.").

"Because [the government's] pre-litigation position was not substantially justified, the Court need not address whether [its] litigation position was substantially justified." *Zheng Liu v.*

*Chertoff*, 538 F. Supp. 3d 1116, 1123 (D. Minn. 2008); *see also Bah*, 548 F.3d at 684 ("If the court finds that the government took an unjustified position in either of these stages, it must award fees under § 2412(d)."). But the Court notes that the United States continued to drag its feet even after it initiated litigation. It did not move expeditiously to resolve the case on the merits once the statute-of-limitations issue had been resolved in its favor; instead, it moved to extend the dispositive-motion deadline. In its opposition to that extension request, Defendant noted that the United States had sought no discovery for eight months, then served 87 Requests for Admission six weeks before the end of the discovery period, the resolution of which was the basis of its extension request. The United States also requested several briefing extensions from the Eighth Circuit even though it was relitigating legal issues it had already covered multiple times. This cannot be said to meet "the standard for Government litigation of which a reasonable person would approve." *Pierce*, 487 U.S. at 566.

The government argues it was substantially justified in its statutory interpretation of the DCIA, an issue of first impression in this circuit. While that may be, it is insufficient to show the government's position before and during litigation was "clearly reasonable, well founded in law and fact." *SEC v. Kluesner*, 834 F.2d 1438, 1440 (8th Cir. 1987)*; see also Keasler v. United States*, 766 F.2d 1227, 1234 (8th Cir. 1985) ("That a case presents an issue of first impression in the forum does not ipso facto make the government's position in the litigation reasonable."); *S.M.C.*, 2026 WL 2517563, at *2 ("presenting a non-frivolous statutory interpretation argument does not itself justify the underlying agency conduct that led to the lawsuit").

The Court finds that the government has not carried its burden of showing its position was substantially justified at all stages of this litigation.

## II. <u>There are no special circumstances that would make a fee award unjust</u>

The EAJA includes a "safety valve" preventing a fee award if there are "special circumstances" that would make that award unjust. *See Keasler v. United States*, 585 F. Supp. 825 (E.D. Ark. 1984), *aff'd*, 766 F.2d 1227 (8th Cir. 1985); 28 U.S.C. § 2412(d)(1)(A). This language is intended to ensure the United States will not be "deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts." *Zahareas*, 374 F.3d at 627 (quoting *Russell v. Nat'l Mediation Bd.*, 775 2d 1284, 1290 (5th Cir. 1985)). It also "gives the court discretion to deny awards where equitable considerations dictate an award should not be made." *U.S. Dep't of Labor v. Rapid Robert's Inc.*, 130 F.3d 345, 347 (8th Cir. 1997) (internal quotation marks omitted).

Here, the government lists three "special circumstances" it argues should prevent the award of fees: (1) this action presented an issue of first impression; (2) the government in good faith "advanced arguments that were credible extensions and interpretations of the law"; (3) equitable considerations dictate an award should not be made because the purpose of the EAJA is to prevent a private party from "suffering financial ruin" because of an unjustified government lawsuit, and that purpose is not served by awarding fees to a million-dollar business that ought to have followed OSHA rules in the first place. None of these arguments compels a denial of fees.

First, it cannot be that all issues of first impression create "special circumstances" that prevent the award of EAJA fees—that would overlap significantly with, and render largely superfluous, the question of substantial justification. *See Beck v. Prupis*, 529 U.S. 494, 506 (2000) (recognizing "terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous"); *Zahareas*, 374 F.3d at 627 ("the mere fact that the government advances a novel argument does not automatically insulate it from EAJA liability"); *Russell*, 775

F.2d at 1290 (rejecting government's argument that "because the case on the merits was one of first impression, it automatically falls within the special circumstances exception" and remarking that "[t]he special circumstances safety valve does not create a different, less rigorous standard of review for all cases of first impression") (internal quotation marks and citations omitted).

Even assuming that an issue of first impression standing alone could create a "special circumstance," it does not have that effect here, where it was the government's own inaction that required issues of first impression to be decided. *See Zahareas*, 374 F.3d at 630 (reversing denial of EAJA fee award where SEC's prelitigation conduct was less than diligent and commenting "we find it difficult . . . to protect the SEC from liability due to its presentation of a novel argument in this case when the SEC failed to thoroughly investigate before bringing suit"). The "special circumstances" safeguard allows the United States to advance novel but credible legal arguments that *support* "vigorous enforcement efforts"—not novel but credible legal arguments adopted to *make up for* lackadaisical ones. *See Zheng Liu*, 538 F. Supp. 2d at 1123 (finding no special circumstances where government "provided no explanation" for lengthy delay at agency level and "they created this procedural predicament").

In addition, it is true enough that the conduct of the non-government party in an EAJA case may constitute an equitable consideration that dictates against an award of fees. *See Rapid Robert's*, 130 F.3d at 347. But the government argues merely that Defendant should not recover because it makes significant revenue and has significant assets. The United States offers no caselaw in support, and the statute itself does not bear such a reading. *See* 28 U.S.C. § 2412(d)(2)(B) (setting out individual and business net worth caps for EAJA awardees). Further, at least on the record before the Court, Defendant's factual culpability for the underlying OSHA violations was never adjudicated, since the penalties were finalized without acknowledgement or

opposition on the merits. *See* ECF No. 104 at 3 ("Defendant asserted, and has always maintained, that Defendant was never given due process and the opportunity to refute the Government's assertions and defend itself against the same."). As such, the Court finds that there are no special circumstances present here that would make an award of fees unjust.

### III. Defendant has not shown it is entitled to fees beyond the statutory hourly base rate of $125

As a preliminary matter, the Court notes that Defendant is entitled to both costs and fees. *See Garcia v. Barr*, 971 F.3d 794, 796 (8th Cir. 2020). Defendant requests $9,134.01 in costs, the lion's share of which is attributable to premiums incurred on the bond and letter of credit required to sustain Defendant's appeal to the Eighth Circuit. The United States does not oppose the request for expenses, and the Court will award costs to Defendant.

As for attorney fees, the EAJA limits prevailing parties to an hourly billing rate of $125 "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). A party seeking fees beyond the statutory default must present evidence to justify a higher rate. *United States v. Estridge*, 797 F.2d 1454, 1460 (8th Cir. 1986).

Here, Defendant suggests that the limited availability of qualified attorneys justifies an hourly billing rate of $395 for its lead counsel, along with $175 for paralegals and $225 for junior associates.[2] In an affidavit, Defendant's lead counsel avers that he has more than 50 years' experience "dealing with the Occupational Safety and Health Administration ('OSHA') and litigating in federal courts across the country." (ECF No. 97-3 at 1.) He states that his customary hourly rate is $495, but he lowered his rate for this matter. He also states that those billing rates

---

[2] Though the affidavit of Defendant's lead counsel describes an hourly billing rate of $225 for junior associates, line items of its time accounting show that the junior associate who worked on this matter actually billed at $250 per hour until mid-2025, then maintained an hourly billing rate of $275.

are consistent with or below billing rates of other attorneys with his experience in the area. To rebut Defendant's argument that qualified attorneys are in short supply, the United States lists other local attorneys with similar expertise. Defendant points out, however, that "the firms listed by the Government are firms larger than the undersigned's firm and commonly charge *higher billable rates*." (ECF No. 104 at 3.) The United States also argues that this case turned on the interpretation of the DCIA, for which OSHA expertise was not required. Defendant responds that it advanced additional arguments, like lack of notice of the underlying violations, that did require specialized skill in OSHA requirements.

There is no question Defendant's lead counsel has significant experience and expertise in OSHA-related matters. Furthermore, there is no question that his billing rates are largely aligned with other similarly experienced attorneys in this area. However, as the Supreme Court has held, that is not the relevant inquiry under § 2412:

> If "the limited availability of qualified attorneys for the proceedings involved" meant merely that lawyers skilled and experienced enough to try the case are in short supply, it would effectively eliminate the [$125] cap—since the "prevailing market rates for the kind and quality of the services furnished" are obviously *determined* by the relative supply of that kind and quality of services. "Limited availability" so interpreted would not be a "special factor," but a factor virtually always present when services with a market rate of more than [$125] have been provided.

*Pierce*, 487 U.S. at 571–72; *see also Isbell v. Chater*, 934 F. Supp. 1129, 1130-31 (E.D. Mo. 1996) (declining to award higher fees where prevailing party's attorney simply stated her usual billing rate was higher than the statutory default; that was not a "special factor").

The *Pierce* Court went on to provide examples of the type of "distinctive knowledge or specialized skill" the statute contemplated: "an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id.* at 572. Only in cases where those qualifications were both necessary to the resolution of the case and obtainable only at a higher rate may a court

award fees beyond the statutory default. The Court explained that the "novelty and difficulty of issues," "the undesirability of the case," the "work and ability of counsel," the "results obtained," and "customary fees and awards in other cases" were not "special factors" permitting an award at a higher hourly rate. Applying *Pierce*, the Eighth Circuit has held that an attorney's expertise in the relevant domain "does not in itself warrant a fee in excess of the statutory rate." *Stockton v. Shalala*, 36 F.3d 49, 50 (8th Cir. 1994).

In *Tolin v. Commissioner of Internal Revenue*, 929 F.3d 548, 552 (8th Cir. 2019), the Eighth Circuit applied statutory language identical to this provision of the EAJA. The prevailing party in that case was a taxpayer who owned a thoroughbred horse racing and breeding business. The IRS had accused the taxpayer of failing to pay sufficient federal income tax on his business, but he prevailed at a proceeding before the United States Tax Court. A statute governing fee awards in tax cases mirrors the EAJA, and the taxpayer sought attorney fees under that statute. *See* 26 U.S.C. § 7430(c)(1)(B)(iii). The taxpayer argued that his attorney was an expert in tax issues specific to horse racing and breeding, which was a "special factor" entitling him to a rate of recovery beyond the statutory limit. But the tax and appellate courts disagreed. The Eighth Circuit remarked that the attorney's specialized knowledge "did not significantly contribute to the litigation" since an attorney "without [] equine expertise" could equally have explained why the taxpayer's business activity fit within a governing regulation, entitling him to a lower tax bill. *Tolin*, 929 F.3d at 552-53. Because the case "was not particularly complex or specialized," and had turned on one issue resolved through evidence any competent attorney could have mustered, the court concluded the taxpayer had "not established the presence of a special factor." *Id.* at 553; *see also id.* at 552 (citing *Pierce*, 487 U.S. at 572).

The same is true here. Though Defendant's counsel has significant relevant expertise, that expertise "does not in itself warrant a fee in excess of the statutory rate," *Stockton*, 36 F.3d at 50, where it was not needful for this litigation. Defendant has not established the presence of a "special factor," as contemplated by the EAJA, that permits an upward departure from the statutory default.

However, neither party addresses the other relevant clause of this subsection of the EAJA. In addition to considering special factors, the court may determine that "an increase in the cost of living . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A); *see also McNulty v. Sullivan*, 886 F.2d 1074 (8th Cir. 1989) (per curiam) (the decision to grant a cost-of-living increase is not automatic and is committed to the discretion of the district court); *accord Richardson-Ward v. Astrue*, 2009 WL1616701, No. 4:07-CV-1301 JCH at *1 (E.D. Mo. June 9, 2009) ("The decision to increase the hourly rate is at the discretion of the district court.").

The $125 statutory rate was set in March 1996, at which time the Consumer Price Index for All Urban Consumers (CPI-U) was $155.70. *See 2M Research Servs., LLC v. United States*, 148 Fed. Cl. 99, 108 n.4 (2020). The Court takes judicial notice of the most recent CPI-U published by the Bureau of Labor Statistics of the United States Department of Labor. *See United States v. Love*, 20 F.4th 407, 412 (8th Cir. 2021) ("Judicial notice may be taken at any stage of the proceeding . . . as long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority."); *Barker v. Astrue*, No. 10-CV-2057, 2011 WL 6033016, at *2 (W.D. Ark. Dec. 5, 2011) (taking judicial notice of CPI-U South despite prevailing party's failure to submit it). As of August 2026, the CPI-U was $334.98. Consumer Price Index—August 2026, DOL BLS, USDL-26-1496.[3] Keeping the ratio constant gives an adjusted hourly rate of $268.93. *See Johnson v. Sullivan*, 919 F.2d 503, 504 (8th Cir. 1990) ("We believe that the Consumer Price Index

[3] Permalink: https://web.archive.org/web/20260927081221/https://www.bls.gov/news.release/pdf/cpi.pdf.

constitutes 'proper proof' of the increased cost of living since the EAJA's enactment and justifies an award of attorney's fees greater than $75 per hour [the original 1980 statutory default] in these cases.").

The government does not address whether a cost-of-living increase is appropriate in this case, but the Eighth Circuit suggested in *Johnson* that it should ordinarily be awarded upon proper proof. *Id.* at 505 ("The district court should, of course, also consider any circumstances that would render a cost-of-living increase unjust or improper. . . . Under ordinary circumstances, however, the cost of living affects each litigant within a judicial district to the same degree."). The Court concludes that, in this matter, an increase in the cost of living justifies a higher award of $268.93 per hour for lead and experienced counsel.

The United States also does not contest[4] the number of hours itemized in Defendant's time records, nor any particular time entry. (ECF No. 97-3 at 2-10.) Defendant submits records showing 232.6 hours[5] of billable time. Upon consideration, the Court finds the number of hours reasonable. Defendant's lead counsel and other experienced counsel expended 199.8 hours, for which Defendant will receive an hourly rate of $268.93. A paralegal spent 8.8 hours on the case. The Court concludes that Defendant may recover paralegal time at the rates submitted of $175, which the Court finds reasonable. *See Richlin Sec. Service Co. v. Chertoff*, 553 U.S. 571, 590 (holding that "a prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government at prevailing market rates"). A junior associate spent 23.8 hours on the case, and the Court finds an hourly rate of $200 to be reasonable. *See id.* at 588 (addressing "fees for

---

[4] The government points out that the total sought by Defendant in its initial application for costs and attorney fees attributable to the Eighth Circuit appeal includes double-counted costs. (*See* ECF No. 102 at 2.) Defendant denies double counting. (ECF No. 104 at 2 n.1.) Because the Court is not awarding the total amount sought, it need not resolve this issue.

[5] As recorded in Defendant's time records, the total number of billable hours was 232.66. One entry from December 12, 2024, shows 0.06 hours billed, which the Court removed for ease of calculation.

junior attorneys (who generally bill at lower rates than senior attorneys)"); *Richardson-Ward v. Astrue*, 2009 WL1616701, No. 4:07-CV-1301 JCH at *1 (E.D. Mo. June 9, 2009) (listing factors courts consider in determining reasonableness of EAJA fee award). These hourly expenditures together justify an award of $60,032.21.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Attorney Fees (ECF No. 97) is **GRANTED IN PART**. Defendant is awarded attorney fees in the amount of $60,032.21 and costs in the amount of $9,134.01.

***/s/ John M. Bodenhausen***
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of October, 2026.